IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| Jeffrey Dean Poolman, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER GRANTING MOTION FOR** |
| vs. | ) | **SUMMARY JUDGMENT AND** |
| | ) | **DISMISSAL OF STATE CLAIMS** |
| City of Grafton, North Dakota; Chief of Police LeRoy McCann, in his official capacity; City Attorney Nicholas B. Hall, in his official capacity; and Mayor Fred Stark, in his official capacity, | ) ) ) ) ) ) | Civil File No. 2:05-cv-03 |
| | ) | |
| Defendants. | ) | |

Before this Court is Defendant's Motion for Summary Judgment on all counts of Plaintiff's complaint. Plaintiff alleges Procedural and Substantive Due Process violations under 42 U.S.C. § 1983, and state claims of breach of an existing employment contract, unlawful interference in an existing business relationship, and abuse of process.

**SUMMARY OF DECISION**

Without ruling on the issue of whether Plaintiff holds a property interest in continued employment as a police officer, the Court finds the termination procedures to be constitutionally sufficient and holds, as a matter of law, that there is no procedural due process violation. Plaintiff is further unable to meet the threshold requirements of a deprivation of liberty claim as he cannot deny the truth of the underlying allegations. The Court further holds that Plaintiff's substantive due process claim is wholly without merit. The remaining state claims are dismissed without prejudice for lack of federal jurisdiction.

1

**STATEMENT OF FACTS**

Jeffrey Poolman was a police officer hired by the City of Grafton on March 1, 1988. Poolman also operated a consumer electronics business called "PC Electronics" from 1995 to 1999. In 1999, Poolman closed PC Electronics and rented the space to Migrant Health Services. Poolman's building was located at 542 Griggs Avenue in Grafton, North Dakota and Poolman rented the basement of this building to tenant, Honorius Gulmatico. In February, 2001, Gulmatico's girlfriend, Amber Martin, moved into the basement apartment with Gulmatico. Gulmatico began hosting musical performances in the basement of Poolman's building featuring Christian rock bands and other groups with Poolman's permission, on the condition that no drugs, alcohol, or tobacco were brought on the premises.

On the evening of July 8, 2001, Derek Paulson, a member of a band that had performed in the basement of Poolman's building, discovered a pinhole camera, placed within the molding of the bathroom door, in the bathroom of Mr. Gulmatico's residence. Paulson informed Danna King of the State Highway Patrol about the camera. King subsequently notified the Bureau of Criminal Investigation (BCI) which in turn contacted the Grafton Police Department. Lt. Kliniske and BCI Agent Kathy Murray met at Poolman's building. Lt. Kliniske and Agent Murray examined the molding of the bathroom door and followed two wires connected to the camera up through a hole in the ceiling. After obtaining a search warrant for the entire premises at 542 Griggs Avenue, the officers found the wires eventually led to a locked closet which housed a VHS recorder, a video cassette inside the recorder, a small TV, a wood chisel and a hammer. The video tape was later found to be blank.

On July 9, 2001 Police Chief McCann consulted with City Attorney Nicholas Hall and City Administrator Milo Einarson about the possibility of placing Poolman on leave. McCann drafted a letter to Poolman informing of his the decision to place Poolman on administrative

leave and summarizing the basis for that decision. Chief McCann and Lt. Kliniske personally delivered the letter to Poolman on the morning of July 9, 2001. At that time Poolman told the officers that he placed the camera in the bathroom to catch someone using marijuana after an employee Migrant Health Services told Poolman that they could smell an odor of marijuana after a basement concert.

Also on July 9th, BCI Agent Murray obtained a search warrant for Poolman's residence. Inside Poolman's residence officers found a bottle marked "CAP_CHUR_SOL," a film container with powder, a syringe with needle, and a baggie containing white pills and one red and white capsule. Poolman acknowledged to Chief McCann that pills would be found in his personal safe. Plaintiff explained that he had found these items, but that he did not place them into the police station's evidence locker because he had simply forgot. The pills were analyzed by BCI and were found to be Vitamin C, Valium, and a nicotine substance named Capture Salt. Poolman states that he had the pills in his briefcase and did not want his children to find them so he placed them in his personal safe and later forgot to log them into the evidence room at the Police Station. Two video tapes were also found in Poolman's residence; they contained a five second recording of the medical examining table located at Migrant Health Services.

The Grafton Police Department Manual provides that any violations of the policies, procedures, or regulations contained in the manual will be grounds for disciplinary action, and violations of any law, or the filing of an indictment or information filed against any officer, will be cause for disciplinary action up to and including termination of employment. Section 8.05.00 of the manual further states that complaints against officers which allege a criminal violation will be grounds for criminal charges, and that any criminal action will not serve to prevent the internal disciplinary process from dealing with the same violation. Section 12.01.00 and 12.02.00 respectively prohibit the conversion of found property and instruct all officers to check

3

said items into the property locker at the station.  The manual also sets forth the City of

Grafton's dismissal procedure as the following:

> [the] Mayor may, for misconduct, inefficiency, or other just cause,
> dismiss any employee at any time, effective immediately
> without pay, with the approval of the City Attorney as to legality.
> The employee being dismissed shall be furnished a written
> statement of the reasons and a copy shall be filed with the auditor.

The dismissed person has the right to a hearing to present evidence and cross examine witnesses

publically for consideration by the Labor Relations Committee.

Poolman was served with a warrant charging him with Surreptitious Intrusion.  On July

11, 2001, after a few days of investigation, Chief McCann recommended to Mayor Stark that

Poolman be terminated immediately from his position as Grafton police officer.  That afternoon

Chief McCann and Lt. Kliniske returned to Poolman's home, and delivered a formal termination

letter.  This letter read:

> Your employment as a police officer with the City of Grafton is
> terminated effective immediately for reasons that include:
>
> You, without the knowledge of your renter, entered an apartment
> in your building and installed a pinhole camera in the bathroom
> which was wired to a VHS recorder in a locked room on another
> floor in violation of Section 12.1-22.03.1 of the North Dakota
> Century Code with which you have been charged and Section
> 7.07.08 (Criminal Conduct) of the Department policy book.
>
> You had what you believed to be drugs come into your possession
> which were diverted to your personal safe rather than turning them
> in as evidence or found property in violation of Section 12.00.00
> (Evidence and Found Property) 12.01.00 (Conversion, Destruction
> and Evidence/Found Property).

> All department equipment and computer access passwords are to be turned in today. Thank you for the good things you accomplished while an employee of the City. City policy provides for appeal of this action, should you wish.

McCann and Kliniske then asked for Poolman's keys and told him told him "to call anytime." On July 13, 2001, Poolman gave written notice to Mayor Stark of his intention to appeal his termination decision.

On July 24, 2001 Chief McCann, Agent Murray, and Lt. Kliniske and another officer conducted a search of Migrant Health Services, based upon images of examination tables taken from Poolman's videocassette found at his home. The officers observed a hole in the ceiling that did not appear to be factory made. Lt. Kliniske signed an affidavit for a second search of the Griggs Avenue building, including Migrant Health Services. On August 3, 2001 officers searched the area above Migrant Health Services and found evidence of a created hole in the ceiling and coaxial cable. Officers also placed a pinhole camera into the hole and it fit into the recess that had been made. Poolman stated that the holes were from the camera he previously used to prevent theft in his PC Electronics store, and he tested his new video equipment at Migrant Health Services because the holes and power cord were already there and no one would be present at Migrant on a Saturday. After testing the camera he removed it and took the tapes home.

Ms. Bennette and Ms. Altenbernd, representatives of Migrant Health Services, met with Chief McCann and City Attorney Hall on August 6, 2001 to discuss the investigation. Ms. Bennette was shown photos of the exam table and police reports. On August 21, 2001, Migrant Health Services informed Poolman that they would be terminating their lease.

On August 13, 2001, the city supplemented its termination letter with the additional information found during the search of Migrant Health Services. The city informed Poolman on August 16th that his appeal hearing before the Grafton Labor Relations Board would take place on September 11, 2001. On September 7th, Grafton City Attorney Nicholas Hall sent Poolman's attorney a letter detailing the evidence against Poolman as well as exhibits such as photographs, video tape images, diagrams of the building, the pinhole camera itself, and the ceiling tile removed from the Poolman's building. This hearing was closed to the public, although Poolman had the option of requesting an open hearing. At this hearing, both sides had the opportunity to present evidence, make objections, call and cross-examine witnesses, and make a brief closing statement. After deliberating on the record, the Grafton Labor Relations Board unanimously denied Poolman's appeal.

## ANALYSIS

Defendant moves for summary judgment on all counts of Plaintiff's complaint. Plaintiff alleges procedural and substantive due process violations under 42 U.S.C. § 1983; that Plaintiff's termination violated an implied right of contract; that Defendant unlawfully interfered in an existing business relationship with Migrant Health Services by informing them of details of the investigation; and that Defendants abused the criminal process and court system by obtaining a second warrant to search Plaintiff's business premises for alleged sole purpose of obtaining additional evidence to assist in Plaintiff's termination.

**42 U.S.C. § 1983 Procedural Due Process Claim**

In order to assert a procedural due process claim, Plaintiff must show that the he was deprived of a life, liberty, or property interest without sufficient procedural safeguards. Bishop v. Wood, 426 U.S. 341 (1976); Vukleic v. Bartz, 245 F. Supp. 2d 1068, 1081 (D.N.D. 2003) (citing Krentz v. Robertson Fire Protection District, 228 F.3d 897, 903 (8th Cir. 2000)). Poolman contends that he was deprived of a property interest, namely his continued employment as a police officer in the City of Grafton, without sufficient process and that he was further deprived of a liberty interest of not being stigmatized as a criminal. The Court addresses each in turn.

### A. Property Interest

The existence of a property interest in continued governmental employment is determined by reference to state law. Bishop, 426 U.S. at 345. A property interest in continued employment arises from contracts or statutory provisions, but may also arise from implied contracts, customs, practices, and de facto policies. Perry v. Sindermann, 408 U.S. 593, 601 (1972). Once it is determined that a property in continued governmental employment interest exists, due process is required to deprive one of that property. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538 (1985).

North Dakota law has never stated, nor has the North Dakota Supreme Court ever found, that a employee handbook or manual may create a property interest in continued governmental employment. In Little v. Spaeth, the North Dakota Supreme Court declined to apply a such a rule when a state employee manual read that an employee could only be dismissed for cause

because the rule had not ben validly promulgated in accordance with N.D.C.C. § 28-32-02. 394 N.W.2d 700, 704 (N.D. 1986)  In <u>Livingood v. Meece</u>, the Court cited <u>Little</u>, but similarly declined to read such language as conferring a property interest because the respective parties did not brief the issue.  477 N.W.2d 183, 193 (N.D. 1991)

      The North Dakota Century Code provides some limited direction.  Section 34-03-01 requires that employment at will, that is employment without no specified term of duration, may be terminated at the will of either party upon notice.  If there is no fixed duration of employment, there is generally no employment contract.  Absent a contract, an employee may be dismissed, without showing cause and without a due process violation.  Parties, however, may modify this at-will presumption and instead define the their contractual rights regarding termination of employment.  <u>Thompson v. Associated Potato Growers, Inc.</u>, 610 N.W.2d 53 (N.D. 2000).

      This presumption can be overcome by showing that an employee had an expectation of continued employment.  In Section 3.04 of the Grafton City Personnel Procedures, entitled "Dismissal," provides that "the Mayor may, for misconduct, inefficiency, or other just cause, dismiss any employee at any time..."  While the addition of the phrase "just cause" may be, in some circumstances, sufficient to confer a expectation of continued employment, the Court declines to make such a finding here.  The Court will instead assume, without deciding, that there was an expectation of continued employment and will address the constitutional sufficiency of the termination procedures in accordance therewith.

      In <u>Loudermill</u>, the Supreme Court held that due process is met in the employment termination context when 1) notice is given and 2) the employee is given an opportunity to be heard.  470 U.S. at 546.  In a procedural due process claim, the critical inquiry is not whether the

individual has been denied a constitutionally protected interest for an unfair or improper reason. Rather, the focus is on the adequacy of the mechanisms in place for the protection of such interests. Vukulic v. Bartz, 245 F. Supp. 2d 1068, 1083 (D.N.D. 2003) (citing Strasburger v. Board of Education, 143 F.3d 351, 358 (7th Cir. 1998)). The Supreme Court has held that a procedural due process violation "actionable under § 1983 is not complete when the deprivation occurs, it is not complete unless and until the State fails to provide due process." McDaniels v. Flick, 59 F.3d 446, 460 (3rd. Cir. 1995) (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990))

In Rudnick v. City of Jamestown, 463 N.W.2d 632 (N.D. 1990) the court looked to Loudermill for elucidation as to the baseline constitutional guarantees afforded a governmental employee.

> The essential requirements of due process, and all the respondents seek of the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement ...The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story... To require more that this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

Id. (citing Loudermill, 470 U.S. at 545-46). Upon review of the factual record, the Court is satisfied that both are met in the instant case.

The Court concludes Poolman was afforded adequate notice prior to termination. Following the discovery of the pinhole camera in the bathroom of Poolman's rented space, Police Chief McCann met and briefed the City Administrator and City Attorney about the evidence discovered and about placing Poolman on leave. Chief McCann prepared the following

9

letter, which he, along with Lieutant Kliniske, personally served on Poolman on the morning of July 9th, 2001. It read:

> Due to the ongoing investigation by the North Dakota Bureau of Investigations which focuses on a property owned by you and the existence of a pinhole camera which was wired to a VHS recorder on the premises in violation of NDCC you are placed on paid administrative leave immediately pending investigation. Due to the paid status, you will make yourself availableto the Chief of Police during normal working hours.

The letter clearly sets forth the charges against Plaintiff, it references an ongoing investigation, and it summarizes the evidence against him. This gave Poolman the opportunity to explain his actions between the July 9th receipt of the letter placing Poolman on administrative leave and the July 11th date of his termination. Even notice given contemporaneously with termination has been found to satisfy due process. Coleman v. Reed, 147 F.3d 751, 754 (8th Cir. 1998) (citing Riggins v. Board of Regents, 790 F.2d 707, 711 (8th Cir. 1986)). The three day span in between notice and termination was thus sufficient to satisfy due process.

Poolman was also afforded an opportunity to be heard regarding the pinhole camera. This meeting need not be elaborate in order to comport with due process. Winskowski v. City of Stephen, 442 F.3d 1107, 1110 (8th Cir. 2006); Schleck v. Ramsey County, 939 F.2d 638, 642 (8th Cir. 1991). As Loudermill explains, it merely needs to give the employee a chance to provide explanation or add context to the charge with which he is faced.

Here the pretermination hearing need not definitively resolve the

> propriety of the discharge. It should be an initial check against
> mistaken decisions - - essentially, a determination of whether there
> are reasonable grounds to believe that the charges are true and
> support the proposed action...

470 U.S. at 546-47. Courts have routinely found informal hearings, of broad stripe, to be constitutionally acceptable. See <u>Coleman</u>, 147 F.3d at 754 (termination after a private meeting of employee, her attorney, and associate school superintendent was constitutional); <u>Powell v. Mikulecky</u>, 891 F.2d 1454, 1459 (10th Cir. 1989) (situation where employee was confronted and asked and answered two questions was a constitutionally sufficient pre-termination hearing); <u>Riggins</u>, 790 F.2d at 711 (an "informal meeting with supervisors" may satisfy due process).

      In the instant case, Poolman had the opportunity to address the allegations contained in the July 9th letter as early as he was handed the letter placing him on leave. In fact, Poolman immediately admitted to placing the camera in the bathroom but explained that he did so in an attempt to catch people using drugs on the premises. He further told Chief McCann and Lt. Kliniske that the tenants had informed him of a marijuana odor following the concerts. Poolman admitted that he initially placed the camera in the dance hall area and later moved it to the bathroom. He also said the camera had been in the bathroom for only a week and was not set properly. Poolman also stated at that time that he knew that setting up the camera in the bathroom was wrong. He expressed to McCann and Kliniske that "this could screw up my career."

      While the Court is convinced that this initial meeting was alone enough to satisfy the due process requirement of a pre-termination hearing, Poolman had further opportunity to explain his actions. Later that day, Poolman entered McCann's office and stated that he was worried what

officers might find during the search of his home. Poolman related that he found some pills on the street and that he had taken them home and placed them in his safe. He further told McCann that he had not used any drugs and urged that a drug test be administered. McCann administered a drug test upon Poolman's recommendation, which came back negative.

Poolman also explained his version of events at length to the investigating officer, Lt. Kliniske and Agent Murray. Poolman explained to Agent Murray the reason for his installation of the surveillance camera. During the search of his house, Poolman told Kliniske that he worried about the drugs that investigating officers would find in the safe. He explained how he came across pills in the street and told Kliniske that he had not ingested any. He also told Kliniske that officers would find a syringe in his safe and that it belonged to a former tenant who was a diabetic. Based on Poolman's voluminous explanations proffered to investigating and supervising officers, the Court finds that Plaintiff had sufficient opportunity to respond pre-termination.

Poolman was also afforded a post-termination hearing wherein he was able to present evidence and be represented by counsel. It is the post-termination hearing, rather than the pre-termination hearing, that is the keystone of procedural due process protection. The post-termination hearing provides the employee with an opportunity not only to refute accusations, but also to provide comprehensive evidence and to cross-examine witnesses. The Tenth Circuit explains the functional difference between pre and post-termination hearings and of the need to avoid unnecessary formality and duplication.

> The pretermination hearing is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that

> termination is unwarranted.  The pretermination hearing is intended to
> supplement, not duplicate, the more elaborate post-termination hearing.
> Because the post-termination hearing is where the definitive
> fact-finding occurs, there is an obvious need for more formal due
> process protections at that point.  To duplicate those protections at the
> pretermination stage would cause unnecessary delay and expense
> while diffusing the responsibility for the ultimate decision to
> terminate an employee.

Powell, 891 F.2d at 1458.  On, July 13th, 2001, two days after his termination, Poolman informed the Mayor of Grafton of his intent to appeal the termination decision.  Poolman was informed of the hearing date and received a letter detailing the evidence the Police Department planned to present at the hearing, namely exhibits such as photographs, video tape images, diagrams of the building, the pinhole camera itself, and the ceiling tile removed from the Poolman's building.  Poolman also exercised control over this hearing would be public or private.  At this hearing, both sides had the opportunity to present evidence, make objections, call and cross-examine witnesses, and make a brief closing statement.

The Court finds that Poolman's initial, pre-termination explanations to Chief McCann and Lt. Kliniske, and his formal post-termination hearing satisfy the requirements of Loudermill.  The Court further finds that Poolman was afforded adequate notice of the accusations he faced and the evidence against him.  Thus, this Court concludes that the City of Grafton did not deprive Plaintiff of a due process property interest.  The Court grants summary judgment as to this claim.

### B.  Liberty Interest

Poolman asserts a violation of procedural due process, specifically his liberty interest in

not being defamed and stigmatized as a criminal. A liberty interest arises when a governmental employee is terminated under circumstances that call into question the employee's reputation, honor, or integrity. Sims v. City of New London, 738 F. Supp. 638, 645 (D. Conn. 1990) (citing Bishop v. Wood, 426 U.S. 341, 348 (1976)); See also Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). The rather salacious allegations leveled against Plaintiff would certainly implicate one's reputation for honesty and integrity, if not basic morality. In order to prove a violation of a liberty interest, the Plaintiff must show that (1) the City's reasons for his discharge defamed and stigmatized him by seriously damaging his reputation or by foreclosing other employment opportunities; (2) that the city made the reasons for the discharge public; and (3) the Plaintiff must deny the truth of the charges. Codd v. Velger, 429 U.S. 624, 628 (1977).

Without examining the first two elements, the Court finds that the third element, that of denying the veracity of the charges, precludes Plainitff's liberty interest claim. Plaintiff has not denied the underlying facts that supported his discharge. He further admitted to Chief McCann, Lt. Kliniske, and Agent Murray, that he surreptitiously placed the camera in areas leased by third parties and that he did not follow proper procedure in securing potential narcotic substances. As Plaintiff cannot state that the underlying charges are untrue, the Court finds summary judgment proper to Poolman's liberty interest claim. See Vukelic, 245 F. Supp. 2d at 1083 ("for purposes of a due process claim defamation occurs when a state official publicly level *untrue* charges against an individual, seriously damaging his or her standing in the community, or forecloses any change for other employment opportunities." (citing Mascho v. Gee, 24 F.3d 1037, 1039 (8th Cir. 1994) (emphasis added)).

**42 U.S.C. § 1983 Substantive Due Process Claim**

Plaintiff also claims violation of his substantive due process rights. Substantive due process rights safeguard "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." DeLlano v. Berglund, 142 F. Supp. 2d 1165, 1169 (D.N.D. 2001) (quoting Singleton v. Cecil, 176 F.3d 419, 424 (8th Cir. 1999)). When an employee has a property interest in continued employment, substantive due process is violated when the termination or other action is arbitrary or irrational. Singleton, 176 F.3d at 423. Substantive due process generally "precludes the government from taken action that is wholly unrelated to legitimate public interests." Rudnick, 463 N.W.2d at 640 (citing Beller v. Middendorf, 632 F.2d 788 (9th Cir. 1980)).

Plaintiff does not base his substantive due process claim on a charge of arbitrary or irrational termination, but rather that the August 6, 2001 meeting of Chief McCann, City Attorney Hall and representatives of Migrant Health Services "stigmatized and defamed" Poolman. The Court cannot find that this meeting, in which the Grafton officials informed Migrant representatives that they may be the victim of a crime, was wrongful, let alone arbitrary or irrational. Plaintiff cites Terrell v. Larson for the proposition that a substantive due process violation merely requires an intentional and wrongful act, or that a violation may spring from only an intermediate level of culpability. 396 F.3d 975 (8th Cir. 2005). Plaintiff's reliance on Terrell, however, is misplaced as a substantive due process violation still requires action that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1988). A claim further requires the

violation of an established right.  Terrell, 396 F.3d at 978.  Both Terrell and Lewis concerned high speed police car chases that resulted in death of bystanders.  Substantive due process is implicated in such a context, being applied typically in matters relating to marriage, procreation, and the right to bodily integrity.  Abeyta By and Through Martinez v. Chama Valley Independent School Dist. No. 19, 77 F.3d 1253, 1257 (10th Cir. 1996) (citing Albright v. Oliver, 510 U.S. 266 (1994) (citation omitted).  Such harms are not at issue in the instant case, and the Court is aware of the strong presumption against liberal application of substantive due process remedies.  "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because signposts for responsible decision making in this uncharted area are scarce and open-ended."  Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (citing Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225-26 (1985).  An action must be more than simply a tort to be actionable under section 1983.  Abeyta, 77 F.3d at 1257.  This cannot be said of the alleged harm here.  Further, it cannot be said to "shock the conscience."  The Court finds summary judgment to be proper as to this claim.

## State Claims

Having granted summary judgment on all claims that would otherwise confer federal jurisdiction, this Court must now determine whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a).  Typically, when a court has resolved all federal claims before trial, the state claims should be dismissed.  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  Such state claims should only be preserved when the interests of fairness to the parties, judicial economy, and convenience are served by maintaining the state claims, in light of the

extent of pretrial proceedings.  Univ. Of Colo. Hosp. Auth. v. Denver Publ. Co., 340 F. Supp. 2d 1142, 1146 (2004) (citing Thatcher Enter. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990).  The proceedings thus far have not been extensive and Plaintiff's interest in receiving judicial resolution of his remaining claims would be equally served by a state tribunal.  This Court declines to exercise supplemental jurisdiction and the state claims are dismissed without prejudice.

## CONCLUSION

This Court finds that Defendant is entitled to summary judgment on all claims alleging violations of Plaintiff's procedural and substantive due process rights.  Summary judgment is **GRANTED** as to these claims.  The Court does not elect to exercise supplemental jurisdiction over the remaining state claims and **DISMISSES** said claims without prejudice.

**IT IS SO ORDERED**.

Dated this 24th day of July, 2006

    /s/ Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court